IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER SEVEN |
| BURTON C. BELL and<br>AMY L. JOHNSON, | : | BANKRUPTCY NO.: 4-11-bk-04892-JJT |
| DEBTORS | : | |
| BURTON C. BELL and<br>AMY L. JOHNSON, | : | {**Nature of Proceeding**: Motion for Contempt and Request to Enforce Discharge Order (Doc. #22)} |
| MOVANTS | : | |
| vs. | : | |
| RAYMOND HERRERA and<br>CHRISTIAN OLDE WOLBERS, | : | |
| RESPONDENTS | : | |

# OPINION

A rather odd sequence of events has created a convoluted scenario which I here address.

The Movant, Burton C. Bell, ("Bell"), together with Respondents, Raymond Herrera and Christian Wolbers, ("Respondents"), were part of a performing group known as Fear Factory. Respondents' Exhibit ("REX") #1 ¶ H. On March 15, 2011, Bell, the Respondents, and others entered into an Agreement of Settlement and Mutual Release as to licensing rights regarding a band known as Fear Factory. REX #1. The Agreement resolved a litigation pending in the United States District Court for the Central District of California (pre-bankruptcy litigation). Three months later, on July 12, 2011, Bell, along with the joint Movant, Amy L. Johnson, filed a Chapter 7 bankruptcy in this Court. They obtained a discharge on November 14, 2011. While listing the Respondents as creditors, Bell failed to list the pre-bankruptcy settlement as an

executory contract or other asset.

In 2014, approximately three years after Bell's bankruptcy, Respondents sued Bell and others in the Superior Court of California (post-bankruptcy litigation). Paragraph 8 of that complaint referenced Bell's bankruptcy, affirmed that no damages sought in the complaint accrued prior to Bell's bankruptcy, and alleged that plaintiffs were solely seeking damages as a result of post-bankruptcy conduct and activities. REX #4. The California plaintiffs further alleged that Bell "reaffirmed" the pre-bankruptcy settlement agreement and has used the intellectual property spelled out in the settlement agreement without compensating the plaintiffs.

Bell, who at all relevant times in the 2014 litigation was represented by counsel, and the other defendants to that lawsuit filed a cross-complaint on August 7, 2014. REX #5. On January 5, 2015, Bell and the other defendants filed an answer with 14 affirmative defenses including discharge in bankruptcy. REX #6. Nonetheless, on October 15, 2015, all the parties to the complaint signed a stipulation for "Entry of Judgment" providing that judgment would be entered against Bell and the other defendants in the amount of $214,307.24, together with attorney's fees and costs to be determined. The parties also agreed that the court would retain "jurisdiction to award attorney's fees and cost pursuant to a Motion for Attorney's Fees and a cost memorandum to be filed by Plaintiffs." REX #7. The California Court approved that stipulation on December 16, 2015. REX #8. Thereafter, on April 13, 2016, due to the addition of costs and attorneys' fees, judgment was entered against Bell alone for $905,605.41. REX #9. Consistent with the executed stipulation, the judgment also declared that "[t]he Agreement of Settlement and Mutual Release dated March 15, 2011 remains in full force and effect."

The Respondents refer to the settlement of the post-bankruptcy lawsuit as a

"reaffirmation." In bankruptcy parlance, that probably is an inappropriate term. Reaffirmation is generally utilized in the context of 11 U.S.C. § 524(c), which limits reaffirmation to agreements between debtor and creditor occurring during the pendency of the bankruptcy and before discharge. This is simply not a reaffirmation.

One of the keys to a proper disposition of this litigation lies in a determination as to whether the settlement agreement reached in the 2011 California pre-bankruptcy litigation was an "executory contract" subject to the relevant provisions of the Bankruptcy Code. That determination should be made as of the date of Bell's bankruptcy filing, July 12, 2011. *In re Columbia Gas System Inc.*, 50 F.3d 233, 238 (3d Cir. 1995). If not executory, then the parties are relegated to their rights and remedies under the Bankruptcy Code. If executory, then the Court must address the issue of whether the contract was assumed or rejected, and the parties' rights will flow from that.

"[An executory contract is] a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir.1989) (citing cases).

According to the 22-page settlement agreement of the pre-bankruptcy litigation (REX #1), Burton Bell, Raymond Herrera, and Dean Cazares, were founding members of a band know as Fear Factory. Fear Factory, Inc., owned by Bell, Herrera, and others, also owned the rights to the trade name and trademark "Fear Factory." The thrust of the pre-bankruptcy settlement provided that Bell and others would be authorized to use the name Fear Factory in exchange for

[K:\Cathy\Opinions-Orders filed 2019\4-11-bk-04892-JJT_Bell-Johnson pdf]    3

Case 4:11-bk-04892-JJT    Doc 35    Filed 02/07/19    Entered 02/07/19 13:45:34    Desc
Main Document    Page 3 of 9

compensation payable to the Respondents.

The parties appear to concede that the agreement in question is an executory contract. The Movants argue it was rejected and Bell's obligation terminated. However, the Respondents posit that the contract was "reaffirmed" and Bell's obligation continues.

I find that both sides are somewhat in error.

The agreement was never scheduled as an executory contract, and the Chapter 7 Trustee never assumed or rejected it. Under § 365(d)(1), it would be deemed rejected after 60 days from the order for relief. Section 365(d)(1) provides that, in Chapter 7, executory contracts that are neither assumed nor rejected within 60 days are deemed rejected. The contract was not scheduled by the Debtors-Movants, and the Chapter 7 Trustee may not have been aware of its existence. Nevertheless, automatic rejection has been held applicable even when the contract was not scheduled by a debtor. *Matter of Provider Meds, L.L.C.*, 907 F.3d 845, 857 (5th Cir. 2018), *Sunbeam Products, Inc. v. Chicago American Mfg., LLC*, 686 F.3d 372, 377 (7th Cir. 2012). However, this rejection does not mean the contract is terminated. 3 *Collier on Bankruptcy* ¶ 365.10[3] at 365-82 (Richard Levin & Henry J. Sommer eds., 16th ed.). In fact, the bankruptcy statute includes special provisions that govern continuing rights under a licensing agreement. 11 U.S.C. § 365(n).

Since both Respondents were listed as creditors, Bell's prepetition obligations to them were discharged. Moreover, any assumption of a pre-bankruptcy agreement must be approved by the bankruptcy court and this was not done. 11 U.S.C. § 365(a).

The 2011 settlement agreement includes a licensing agreement. As mentioned earlier, special provisions are provided in § 365(n) should a debtor be a licensor under an agreement. In

such a case, rejection of such an agreement would allow the nondebtor licensee to retain the use of that license under certain identified circumstances. Here, however, Bell was the *licensee* securing the right to use the band name in exchange for payments to these Respondents from Fear Factory recordings, sales of merchandise, and live performances. REX #1. 11 U.S.C. § 365(n) would, therefore, not be applicable. The prepetition agreement also effected a transfer of ownership of the trademark and trade name to Bell and others.[1] REX #1 ¶ 2.

Turning to the post-bankruptcy California lawsuit, I find that the complaint alleges some causes of action that arise out of the 2011 agreement and other causes of action that are independent of that agreement. REX #4. Bell was well aware of the potential violation of the discharge injunction since he raised it in his response. REX #6 ¶ 2. Clearly, the Respondents are barred from enforcing a pre-bankruptcy agreement that was not assumed. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 532, 104 S. Ct. 1188, 1199, 79 L. Ed. 2d 482 (1984) ("[T]he filing of the petition in bankruptcy means that the collective-bargaining agreement is no longer immediately enforceable, and may never be enforceable again.") Such attempt is a violation of the discharge injunction. Nevertheless, there exists here a debtor who is alleged to have continued to perform under the licensing rights provided for in the rejected agreement. REX #4. Despite the fact that the Respondents are not entitled to enforce a rejected agreement, continued performance by Bell in violation of Respondents' *rights* certainly results in a cause of action by the Respondents entitling them to litigate that claim as was done in the 4th and 5th counts of the post-bankruptcy California complaint. REX #4.

---

[1] The settlement agreement also purported to transfer a trademark and trade name to Bell (REX #1 ¶ 2), which does not appear to have been scheduled by Bell in his bankruptcy. If such is the case, the property would vest in the estate and remain property of the estate despite the closing of the case in 2011. 11 U.S.C. § 554(d).

> If the debtor-in-possession elects to continue to receive benefits from the other
> party to an executory contract pending a decision to reject or assume the contract,
> the debtor-in-possession is obligated to pay for the reasonable value of those
> services, *Philadelphia Co. v. Dipple*, 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85
> L.Ed. 651 (1941), which, depending on the circumstances of a particular contract,
> may be what is specified in the contract, see *In re Public Ledger*, 161 F.2d 762,
> 770-771 (CA3 1947). See also *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954-955
> (CA1 1976).

*N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. at 531.

Bell's misconception is the implication that a rejected contract is also a terminated contract. That is not necessarily the case. *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1308 (11th Cir. 2007); *Matter of Austin Development Co.*, 19 F.3d 1077 (5th Cir. 1994); *In re Modern Textile, Inc.*, 900 F.2d 1184, 1191 (8th Cir. 1990); *Leasing Service Corp. v. First Tennessee Bank Nat. Ass'n*, 826 F.2d 434, 437 (6th Cir. 1987). See, also, the discussion of Judge Ambro in his concurring opinion in *In re Exide Technologies*, 607 F.3d 957, 967 (3d Cir. 2010), as amended (June 24, 2010). Rejection creates a breach, but not every breach mandates a termination.

Bell's continued use of the license that was negotiated by the 2011 pre-bankruptcy agreement creates an obligation to pay those who provided that license. Since Bell did not testify or call any witnesses on his behalf at the hearing on the Motion for Contempt, I am forced to make certain deductions based on circumstantial evidence to determine the basis of the 2015 post-bankruptcy settlement. I find that it is reasonable to conclude that a voluntary state court settlement, after having raised the bankruptcy discharge defense, implies that the settled claim was for post-bankruptcy obligations of Bell to the Respondents. The settlement also includes Bell's commitment to abide by the terms of the 2011 agreement going forward. REX #7. This should not be confused with an assumption under 11 U.S.C. § 365, which would require that all

delinquencies be cured as well as require bankruptcy court approval.

The burden of showing contempt is on the Movants. That burden of proof must be by clear and convincing evidence. *Marshak v. Treadwell*, 595 F.3d 478, 486 (3d Cir. 2009). The Movants offered no testimony to meet this burden. Rather, the Movants relied on the Respondents' exhibits and witness. In essence, the Movants ask me to assume that any litigation against Bell on the prepetition agreement is a per se violation of the discharge injunction. To the extent the agreement was executory, the failure to assume ends Bell's obligation to perform under the agreement and the Respondents' ability to enforce its terms against Bell. To the extent that the post-bankruptcy 2014 lawsuit litigates over a breach of that 2011 agreement, I agree with the Movants that the discharge injunction has been violated. However, the 2014 complaint also appears to pursue causes of action that are unrelated to the earlier agreement as is more specifically alleged in the 4th and 5th causes of action. The evidence supports a finding that Bell was accused of using the property (licensing rights, etc.) of the Respondents postpetition without compensating the Respondents. Bell agreed to settle that claim as set forth in the post-bankruptcy settlement agreement. REX #7.

When considering a contempt motion, it is the burden of the movant to prove "'three elements by clear and convincing evidence to establish that a party is liable for civil contempt: (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order.' *Id.* (internal quotation marks omitted)." *Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009).

I believe the attempt by the Respondents to enforce the pre-bankruptcy 2011 settlement agreement against Bell, in the absence of a post-bankruptcy readoption by Bell, was a violation

of the discharge injunction. I find that a portion of the post-bankruptcy 2014 lawsuit was a clear attempt by the Respondents-licensors to enforce the rejected agreement in addition to seeking recovery for the unauthorized use of licenses, trademarks, and trade names. Sanctions for the violation are measured as follows: "Sanctions for civil contempt serve two purposes: 'to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.' *Robin Woods*, 28 F.3d at 400 (quoting *McDonald's Corp. v. Victory Invs.*, 727 F.2d 82, 87 (3d Cir.1984))." *Marshak v. Treadwell*, 595 F.3d 478, 494 (3d Cir. 2009). Compelling compliance with the discharge injunction appears to be no longer necessary since Bell has voluntarily agreed to conform his future conduct to the terms of the 2011 agreement in his 2015 settlement. REX #7.

To be clear, while initiating the lawsuit which seeks, in part, to enforce the pre-bankruptcy settlement was a violation of the discharge injunction, I find no evidence that the parties' voluntary settlement of that lawsuit was also a violation.

Recapping, I find that Counts I, II, and III of the 2014 California lawsuit violated the discharge injunction by attempting to enforce a rejected executory contract. I further find that Counts IV and V do not violate the discharge injunction, inasmuch as they merely seek damages from Bell and others for using rights that belong to the plaintiffs of that litigation. Also, I find that the settlement of 2015 reflects an arms-length resolution of Counts IV and V and, therefore, it too is not a violation of the discharge injunction.

For the reasons stated, I therefore find that Movant-Bell's Motion for Contempt should be granted. I will note that neither the pleadings nor the evidence implicates any relevant involvement by the joint Movant, Amy L. Johnson, and for that reason the Motion will be denied

[K:\Cathy\Opinions-Orders filed 2019\4-11-bk-04892-JJT_Bell-Johnson pdf]    8

Case 4:11-bk-04892-JJT    Doc 35    Filed 02/07/19    Entered 02/07/19 13:45:34    Desc
Main Document    Page 8 of 9

as to her.

Since I bifurcated the damage portion of this Motion, I will set a hearing for Friday, March 15, 2019, at 10:00 o'clock A.M. in the United States Courthouse, Courtroom #3, Third Floor, 240 West Third Street, Williamsport, Pennsylvania, to allow Movant-Bell, to establish his damages for violation caused by advancing Counts I, II, and III of the 2014 lawsuit.

My Order will follow.

By the Court,

_John J. Thomas, Bankruptcy Judge_ (CMP)

Date: February 7, 2019